IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02004-JLK

KAREE KLASSEN,

    Plaintiff,

v.

DEER TRAIL SCHOOL DISTRICT 26J,

    Defendant.
_____

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(ECF NO. 27)**
_____

Kane, J.

In this employment case, Plaintiff Karee Klassen alleges her former employer, Defendant Deer Trail School District 26J (the School District), retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* Presently before me is the School District's Motion for Summary Judgment (ECF No. 27), which argues that Ms. Klassen has failed to show a causal connection between her protected activity and the School District's adverse action. I am unpersuaded by the School District's arguments, and therefore deny the motion.

## I. BACKGROUND AND RELEVANT FACTS

Ms. Klassen was initially hired by the School District in 1994 as a social studies teacher. Klassen Affidavit ¶ 2, ECF No. 28-1. In 2007, she became the Transportation Director, and the following year she was hired as the Athletic Director. Klassen Dep. 18:23-24, 26:17-27:2, ECF No. 27-2. Both positions included a supplement to her teaching salary and were "subject to

1

change at any time." Employment Contract ¶ 4.1, ECF No. 28-12. In 2014, Ms. Klassen became the Dean of Students as well. Klassen Dep. 19:7-10; 5/1/15 Evaluation at 1, ECF No. 28-5. She received largely positive employee reviews from the School District. *See* 4/11/11 Evaluation, ECF No. 28-4; 2/15/15 Evaluation, ECF No. 28-5; 5/1/15 Evaluation. On May 1, 2015, the School Superintendent expressed concerns about Ms. Klassen's inequitable administration of student discipline as Dean of Students. 5/1/15 Evaluation at 15; Klassen Dep. 42:7-43:18. As Athletic Director, Ms. Klassen made a scheduling mistake in the spring of 2016, resulting in the cancellation of the annual parent night. Klassen Dep. 27:4-24. At an August 31, 2015 meeting of the School District's Board of Education (the Board), Ms. Klassen informed the Board she had accidentally allowed her Commercial Driving License (CDL) to expire—a requirement of the position of Transportation Director. 7/10/08 Contingency Letter, ECF No. 27-5; Klassen Dep. 37:19-39:7.

After Ms. Klassen added Dean of Students to her responsibilities, significant changes to the School District administration and the five-member Board occurred. Schott Dep. 9:13-10:12, 25:12-22, ECF No. 27-3. In June 2015, Kevin Schott was hired as Superintendent. *Id.* 7:14-16. Toward the beginning of his tenure, Mr. Schott communicated to Ms. Klassen that her job was in jeopardy. *Id.* 23:15-20. In November 2016, two new members were elected to the Board, and both expressed concern about Ms. Klassen's job performance to Mr. Schott. *Id.* 10:7-12; 33:6-23.

On June 4, 2016, the School District hosted a golf tournament as a fundraiser. Klassen Dep. 39:24-40:2. Along with other School District employees, Ms. Klassen volunteered to help. She was stationed at various holes to distribute alcoholic beverages to tournament participants. *Id.* 43:19-44:9. At approximately 10:30 a.m., four golfers approached the hole where Ms. Klassen was stationed and yelled, "Show me your tits." *Id.* 45:14-22. One of the golfers was

2

John Price, the Board President. *Id.* Later in the day, Ms. Klassen was at a different hole with a female colleague, Courtney Garner, and when the same group of golfers pulled up to that hole, Mr. Price loudly repeated the same crude directive to Ms. Klassen and Ms. Garner. *Id.* 46:20-47:12. Another female colleague, Board Member Candice Reed, joined Ms. Klassen and Ms. Garner. *Id.* 50:6-10. Ms. Reed confirmed that the group had "been saying that all day." *Id.* Many attendees were consuming alcohol, and the recollection of witnesses is hazy as a result. *See* Reed Dep. 24:7-23, ECF No. 28-8; Garner Dep. 17:2-13, ECF No. 28-9.

Nine days after the tournament, the Board renewed Ms. Klassen's contract as Dean of Students, and Athletic and Transportation Director.[1] Employment Contract at 4; 6/13/16 Board Minutes, ECF No. 28-6. Soon thereafter, Ms. Klassen verbally reported Mr. Price's inappropriate behavior to Mr. Schott. Klassen Dep. 61:12-62:5; Schott Dep. 13:15-14:6. Over the course of the next few months, Mr. Schott met with each member of the Board to inform them of the complaint. Schott Dep. 15:1-17, 50:9-14. Board members then avoided eye contact with Ms. Klassen, changed their body language, and avoided her classroom. Klassen Dep. 66:6-67:14. On October 27, 2016, Ms. Klassen communicated concern to Mr. Schott that she was receiving a lower stipend as Transportation Director than a male who previously held the position. *Id.* 77:5-21. In January 2017, Mr. Schott met with Ms. Klassen to discuss the Board's belief that she was "stirring the pot" through conversations with colleagues regarding paid leave days. *Id.* 67:24-69:14. At that time, Ms. Klassen communicated her belief that the School District was "out to get her" for reporting Mr. Price's offensive comments.

---

[1] The Board combined the two positions into one paid position at the June 13, 2016 meeting. 6/13/16 Board Minutes.

On April 27, 2017, the Board voted against retaining Ms. Klassen as Dean of Students for the upcoming school year, resulting in the removal of job responsibilities but no reduction in pay. 4/17/17 Board Minutes at 2, ECF No. 27-6; Response at 12, ECF No. 28. She was also not re-hired as the Athletic and Transportation Director for the 2017-2018 school year, resulting in the loss of a combined annual stipend of $4,500.00. Klassen Dep. 72:1-6. Ms. Klassen returned to her position as a social studies teacher, and then resigned at the conclusion of that school year. *Id.* 81:16-82:16, 97:18-22.

All administrative prerequisites for filing of this suit have been met. Ms. Klassen filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on August 16, 2017. Klassen Affidavit ¶ 7. On June 1, 2018, the EEOC issued a Notice of Right to Sue. Compl. at 2, ECF No. 1. Ms. Klassen commenced this action within 90 days of receipt of the EEOC Notice. Jurisdiction in this court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is therefore entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A disputed fact is "material" if it could affect the outcome of the suit under governing law. *Adamson*, 514 F.3d at 1145 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* In reviewing a motion for summary judgment, I must view the evidence

and draw all appropriate inferences in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 247-48.

## III. DISCUSSION

### A. Analytical Framework Under Title VII

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to retaliate against an employee because she has opposed any employment practice made unlawful by Title VII. To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliatory motives were involved in the adverse employment decision. *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir. 2008). Where there is no direct evidence of retaliation, a plaintiff may rely on the *McDonnell Douglas* burden-shifting framework to support her claim. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Under the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), a plaintiff must carry the initial burden of establishing a prima facie case of retaliation. If the plaintiff is able to make that showing, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its employment action. *Id.* at 804. And if the employer provides such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's justification is pretextual. *Id.*

For Ms. Klassen to carry her initial burden and make out a prima facie case of retaliation, she must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Tabor v. Hilti*, 703 F.3d 1206, 1219 (10th Cir. 2003). The School District does not dispute that Ms. Klassen has established the first two elements, so I limit my analysis to the element of causation.

5

### B. Prima Facie Case of Retaliation: Temporal Proximity

"To establish a causal connection, [Ms. Klassen] must present evidence of circumstances that justify an inference of retaliatory motive." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (internal quotation marks and citation omitted). A causal connection may be inferred by protected conduct that is closely followed by retaliatory conduct. *Id.* The shorter the delay, the more likely the temporal proximity will support a showing of causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (finding a three-month delay too substantial to independently establish causation). When close temporal proximity is lacking, additional evidence of causation must be presented. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

Ms. Klassen's protected activities are the two complaints she made to Superintendent Schott: First, the complaint made in the summer of 2016 regarding Mr. Price's harassing comment; and second, the October 2016 complaint regarding her compensation as Director of Transportation.[2] Klassen Dep. 61:1-62:9, 77:5-78:18. The materially adverse action by the School District is its April 27, 2017 decision not to renew Ms. Klassen's positions as Dean of Students, and Athletic and Transportation Director. Temporal proximity alone cannot independently support an inference of causation because six months passed between the second

---

[2] Ms. Klassen includes the comments made to Mr. Schott in January 2017 in her description of protected activities. In that meeting, she referenced her previous report of Mr. Price's harassing comments and stated her belief that the Board was "taking it out on [her]." Klassen Dep. 67:24-70:12. She was essentially making a novel complaint of retaliation. I find this complaint too vague to constitute protected activity and decline to opine on whether an employee can be retaliated against for complaining of retaliation.

6

complaint and the alleged retaliation. *See Bekkem*, 915 F.3d at 1271 (confirming additional evidence of causation is required where a gap of three months or longer has occurred).

Ms. Klassen's argument that the School District availed itself of the first possible opportunity to retaliate has some merit. The rationale of the temporal-proximity doctrine is grounded in the observation that an employer is most likely to retaliate when influenced by anger and resentment. *Conroy v. Vilsack*, 707 F.3d 1163, 1182 (10th Cir. 2013). A juror's ability to draw a causal inference between an employee's protected activity and an employer's adverse action will diminish as the inflamed "embers of anger or resentment . . . cool." *Id.* The fading of such negative emotions may, however, be affected by delays in the School District's hiring calendar. The Tenth Circuit has acknowledged that exceptions exist. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003). In *Wells*, a retaliatory inference was established despite a five-month delay because "it did not make sense" to retaliate sooner. *Id*. Given the restrictions of the school year and the Board's meeting calendar, it may not have made sense to retaliate against Ms. Klassen before April 27, 2017. Whether it "made sense" is a question for the jury.

### C. Prima Facie Case of Retaliation: Other Evidence of Retaliatory Motive

Even if temporal proximity does not independently establish a causal connection, Ms. Klassen has presented additional evidence of causation sufficient to establish a prima facie case. First, she has highlighted a suspicious chronology of events. The facts show: as Transportation Director, the Board learned of the lapse in her mandatory CDL in the fall of 2015; as Dean of Students, she was confronted about the unequal administration of student discipline in May 2015; and as Athletic Director, she made a significant scheduling error in the spring of 2016.

7

Yet, despite those defects in her record, her employment contracts were renewed for the 2016-2017 school year. *See* 6/13/16 Board Minutes. When she later reported the incident of sexual harassment and spoke up about an apparent pay disparity, members of the Board then began to avoid her. Klassen Dep. 66:6-67:14. And when she was unjustly accused of "stirring the pot" over the number of employee leave days, she sensed that "everyone [was] out to get her." *Id.* 67:24-70:12. Then, six months after the second complaint, her supplemental employment contracts were withdrawn. This begs the question: what happened in the 2016-2017 school year that justified a significant change in Ms. Klassen's employment? The School District has been silent on that point.

     Second, Ms. Klassen has identified the disconcerting failure of the School District to shed light on the circumstances leading up to the adverse employment action. Mr. Schott thinks he recommended Ms. Klassen's retention as Athletic and Transportation Director, and he cannot remember his position on her deanship. Schott Dep. 16:1-25. But Mr. Price believes Mr. Schott unilaterally decided to remove Ms. Klassen as Athletic and Transportation Director, and that it was Mr. Schott's recommendation not to retain Ms. Klassen as Dean of Students. Price Dep. 10:14-11:2, 19:20-20:12. Viewing these statements in a light favorable to Ms. Klassen, it appears Mr. Price is quick to place blame elsewhere. Further, the decision to allow Mr. Price—the subject of the sexual harassment complaint—to participate in the vote against Ms. Klassen's contract renewal was dubious. A rational jury could infer retaliatory motive on these facts. As such, Ms. Klassen has met her initial burden under Title VII to establish a prima facie case of retaliation.

## CONCLUSION

The School District has failed to establish that no genuine dispute as to a material fact exists under Fed. R. Civ. P. 56(c). The school District's Motion for Summary Judgment is therefore DENIED. (ECF No. 27).

DATED this 31st day of March, 2021.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE